**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE No. 17-cv-81100-BLOOM/Hopkins**

BROWARD MOTORSPORTS OF
PALM BEACH, LLC,

      Plaintiff,

vs.

POLARIS SALES, INC.,

      Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Polaris Sales, Inc.'s ("Defendant")
Motion to Dismiss First Amended Complaint, ECF No. [22] ("Motion"). The Court has
carefully reviewed the Motion, all opposing and supporting materials, the record in this case, the
applicable law, the arguments made by the parties at the hearing held on January 19, 2018 and is
otherwise fully advised. For the reasons set forth below, the Motion is granted.

### I.      BACKGROUND

Plaintiff, Broward Motor Sports of Palm Beach, LLC ("Plaintiff"), filed a four-count
First Amended Complaint ("FAC") against Defendant asserting claims for fraudulent
concealment in Count 1, fraudulent inducement in Count 2, violation of Florida's Deceptive and
Unfair Trade Practices Act ("FDUTPA") in Count 3, and breach of the implied covenant of good
faith and fair dealing in Count 4. *See* ECF No. [20]. Plaintiff is a dealer of motor vehicles while
Defendant is a manufacturer of motor vehicles including the line of Victory Motorcycles at issue
in this lawsuit. *Id.* at ¶ 6. According to the FAC, Plaintiff entered into an asset purchase
agreement with non-party TTB Enterprises, Inc. ("TTB") for the purchase of its assets, including

a franchise dealership/license agreement between Defendant and TTB. *Id.* at ¶ 7. The asset purchase agreement was conditioned upon, in part, Defendant's written approval allowing Plaintiff to act as its licensed franchise dealer. *Id.* On November 14, 2016, Defendant notified the Florida Division of Motor Vehicles ("DMV") that it approved of Plaintiff as a new dealer of its Victory Motorcycles line. *Id.* at ¶ 9. The FAC also alleges that as early as November 14, 2016, Defendant knew it would be terminating the Victory Motorcycles line within the next two months. *Id.* at ¶ 8. Thereafter, on December 8, 2016, Defendant and Plaintiff entered into the Polaris Dealer Agreement, which authorized Plaintiff to act as a dealer of the Victory Motorcycles line from July 1, 2016 until June 30, 2017 (the "2016-2017 Dealer Agreement"). *Id.* at ¶10. And, on the next day, Defendant sent Plaintiff a letter that stated, in part, as follows:

> Congratulations! Your application has been approved and you are set up as a new Polaris dealer for ATV, SXS (Collectively ORV), Slingshot, Victory, Brutus & GEM. . . .
>
> We look forward to a long and profitable relationship. Welcome to the Polaris family of dealers!

*See* ECF No. [20-2].

Four days later, on December 13, 2016, Plaintiff closed on its asset purchase agreement with TTB and acquired its rights to sell the Victory Motorcycles line. *Id.* at ¶ 12. Approximately three months later, on March 9, 2017, Defendant sent Plaintiff a letter indicating it would be winding down and terminating the Victory Motorcycles line and would not renew the dealership agreement for that particular line in July of 2018. *See* ECF No. [20-3]. Two months later, on May 18, 2017, Plaintiff and Defendant entered into the 2017-2018 Dealer Agreement for the Victory Motorcycles line, which had a term of July 1, 2017 to June 30, 2018. *See* ECF No. [20-4].

With this background in mind, Plaintiff alleges claims for fraudulent concealment and fraudulent inducement. Both claims are premised upon Florida Statute § 320.641, which provides that "[f]ranchise agreements are deemed to be continuing, unless the applicant or licensee has notified the department of the discontinuation of, cancellation of, failure to renew, modification of, or replacement of the agreement of any of its motor vehicle dealers." *See* ECF No. [20] at ¶ 18. According to the FAC, this statutory language was grafted onto the 2016-2017 Dealer Agreement and overwrites any non-renewal language within the agreement. *Id.* at ¶ 19. On this basis, Plaintiff alleges that, at the time it entered into the 2016-2017 Dealer Agreement, it relied upon the protection of this statute, Defendant's written and verbal representations that it was looking forward to a "long and profitable relationship," and the ability to renew the dealership agreement to sell the Victory Motorcycles line beyond June 30, 2018. *Id.* at ¶ 20. Specific to the fraudulent concealment count, Plaintiff alleges that Defendant knew it would not renew its dealership rights beyond June 30, 2018, that it had a duty to disclose that information to Plaintiff, and that it instead concealed that information. *Id.* at ¶¶ 21-23. As to fraudulent inducement, the FAC alleges that Defendant's representations about the long and profitable relationship were untrue as it did not intend to renew Plaintiff's dealership rights to sell and service Victory Motorcycles beyond June 30, 2018. *Id.* at ¶ 29. In Count 3, Plaintiff asserts a claim for a statutory violation of FDUTPA, invoking Florida Statute § 501.204(1), which makes it unlawful to engage in any unfair or deceptive acts or practices in the conduct of any trade or commerce. *Id.* at ¶ 35. According to the FAC, Defendant's failure to disclose that it would not renew the dealership agreement for Victory Motorcycles after June 30, 2018 was a deceptive and unfair trade practice. *Id.* at ¶ 37.

In response to the FAC, Defendant filed a Motion to Dismiss all counts with prejudice. *See* ECF No. [22]. Plaintiff filed a Response opposing dismissal of Counts 1, 2, and 3 but agreeing to withdraw Count 4.[1] *See* ECF No. [29]. Defendant filed a timely Reply. *See* ECF No. [30]. The Court thereafter held oral argument and the Motion is now ripe for adjudication.

## II.    LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the

---

[1] At the hearing on the Motion to Dismiss, Plaintiff's counsel confirmed that Count 4 of the FAC had been withdrawn.

factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

## III. DISCUSSION

### a. Count 1 – Fraudulent Concealment

Defendant first seeks to dismiss Plaintiff's claim for fraudulent concealment in Count 1. To state a viable claim, a plaintiff must allege that: (1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known that the material fact should be disclosed; (3) the defendant knew the concealment of or failure to disclose would induce the plaintiff to act; (4) the defendant had a duty to disclose the material fact; and (5) there was detrimental reliance on the misinformation. *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013) (quoting *Philip Morris USA, Inc. v. Hess,* 95 So. 3d 254, 259 (Fla. 4th DCA 2012) (quoting *R.J. Reynolds Tobacco Co. v. Martin,* 53 So. 3d 1060 (Fla. 1st DCA 2010)). In addition, Federal Rule of Civil Procedure 9(b) requires that a plaintiff plead the circumstances constituting fraud with particularity. *See Persaud v. Bank of Am., N.A.*, No. 14-21819-CIV, 2014 WL 4260853, at *12 (S.D. Fla. Aug. 28, 2014) (citing *Zarrella v. Pacific Life*

*Ins. Co.*, 755 F. Supp. 2d 1218, 1223–24 (S.D. Fla. 2010)). This means that the plaintiff "must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." *Ferrell v. Durbin*, 311 F. App'x 253, 258 (11th Cir. 2009).

### i. Detrimental Reliance

Plaintiff's claim for fraudulent concealment fails as matter of law for multiple reasons. Starting with the element of detrimental reliance, Plaintiff contends that, at the time it entered into the 2016-2017 Dealer Agreement, it relied upon "the protection afforded by Florida Statute § 320.641" and "being able to renew the dealership to sell and service the Victory Motorcycles vehicle line-make past June 30, 2018." *See* ECF No. [20] at ¶ 20. Within the context of franchise agreements, Florida law provides as follows:

> Franchise agreements are deemed to be continuing *unless the applicant or licensee has notified the department of the discontinuation of, cancellation of, failure to renew, modification of, or replacement of the agreement of any of its motor vehicle dealers*; and annual renewal of the license provided for under ss. 320.60-320.70 is not necessary for any cause of action against the licensee.

Fla. Stat. § 320.641(2) (emphasis added). According to Plaintiff, it relied upon this statute for the notion that Florida franchise agreements, such as the one at issue, are continuing in nature. In making this argument, however, Plaintiff ignores a critical caveat contained within the statute. That is, the franchise agreement can be discontinued if the licensee, in this case Defendant, notifies the DMV of the failure to renew the agreement of any of its motor vehicle dealers. *Id.* Section 320.641(1)(a), in turn, requires that the licensee give written notice to the dealer and the DMV of its intention to discontinue, cancel or fail to renew a franchise agreement "at least 90 days before the effective date thereof, together with the specific grounds for such action." Fla.

Stat. § 320.641(1)(a). On its face, the statute contains a procedure by which a licensee, such as Defendant, may discontinue a franchise agreement as long as it provides notice to the dealer and the DMV 90 days before the discontinuation. It is undisputed that Defendant complied with this procedure. As such, Plaintiff cannot claim that it relied upon this statute for a continuing dealer relationship when the same statute provides a procedure for terminating the relationship upon notice – a procedure with which the Defendant complied. Thus, the Court finds that Plaintiff's reliance upon this statute for the creation of a perpetual contract is unreasonable as a matter of law. *See Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1428 (S.D. Fla. 1996).

Further, the language of the 2016-2017 Dealer Agreement disclosed that it was subject to non-renewal – the very fact that Plaintiff contends was concealed. On the second page of the 2016-2017 Dealer Agreement, it states: "Product Changes. Polaris may **discontinue** or change the specifications, materials, or design of any Product, or **add or delete Products at any time**, without any liability or obligation to Dealer or Dealer's customers." *See* ECF No. [20-1] at 2 (underline in original, bold added). The agreement addresses the possibility of future non-renewal in its "Renewal, Termination or Non-Renewal" section, which provides that "[i]f **Polaris decides not to renew** this Agreement, Polaris will give Dealer written notice of its intention not to renew, but such written notice is not a condition precedent to the automatic expiration of this Agreement." *Id.* at 15 (emphasis added). In addition, the "Limitation of Remedies" section states in part: "No Damages From Termination or **Non-renewal**. No party terminating or **failing to renew this Agreement** in accordance with its terms will by reason of such termination or **failure to renew** be liable to the other for compensation, reimbursement, or damages of any kind relating to such termination or **non-renewal** . . ." *Id.* at 18 (underline in original, bold added). Thus, when Plaintiff entered into the 2016-2017 Dealer Agreement, it

knew that Defendant may discontinue specific product lines and that the agreement was not necessarily continuous in that it was subject to non-renewal upon notice.

At the hearing, Plaintiff argued that these contractual clauses are invalid in that they are contrary to the notice requirements of § 320.641 and that the statute is controlling. However, as the Court explained above, Plaintiff's reliance upon § 320.641 for the contention that the dealer agreement would be continuous is belied by the statute's procedure for effectuating non-renewal of an agreement. In addition, the 2016-2017 Dealer Agreement contains a provision that modifies its terms to be consistent with applicable law, in this case Florida law. The agreement states in pertinent part: "<u>Modification Due to Other Laws or Regulations.</u> If any provision of this Agreement contravenes or is prohibited by the laws or regulations of any state or other jurisdiction wherein this Agreement is to be performed . . . such provision will be deemed to be modified only to the extent necessary to conform to such laws or regulations . . ." *See* ECF No. [20-1] at 25 (underline in original). As a result, the procedure contained within § 320.641 is deemed to modify the provisions of the 2016-2017 Dealer Agreement, thereby incorporating the 90-day notice requirement for non-renewal of a dealer agreement required by Florida law. The documents attached to the FAC establish that Plaintiff was on notice of Defendant's right of non-renewal when it entered into the 2016-2017 Dealer Agreement. Plaintiff's reliance upon § 320.641 to create a perpetual dealership relationship is unreasonable and fails as a matter of law.

### ii. Duty to Disclose

Plaintiff's fraudulent concealment claim also fails because Defendant did not owe a duty to disclose its intention to discontinue its Victory Motorcycles line to Plaintiff – a potential dealer. At the hearing on the Motion to Dismiss, Plaintiff argued that the concealment consisted of Defendant's failure to disclose its intention to avail itself of the "unless" proviso in §

320.641(2). Plaintiff argued that Defendant knew it would discontinue its line of Victory Motorcycles at the time it signed the 2016-2017 Dealer Agreement and failed to disclose that it would exercise its statutory right not to renew the agreement. Plaintiff's argument presupposes that Defendant owed a duty to disclose this information prior to the execution of the 2016-2017 Dealer Agreement. In its Response, Plaintiff argues that Defendant owed it a duty based on its superior knowledge and the creation of a special relationship. According to Plaintiff, this relationship was created "in the sense that the Agreement between the parties was 'continuing,'" once again relying upon § 320.641. ECF No. [29] at 7. Plaintiff cannot rely upon this statute to require Defendant to disclose the future discontinuation of the Victory Motorcycles line prior to signing the 2016-2017 Dealer Agreement. This is because § 320.641 only imposes a duty on Defendant to disclose its intention not to renew a dealer agreement *90 days in advance*.

Here, the documents attached to the FAC establish that Defendant gave the required notice. Specifically, on March 9, 2017, Defendant sent Plaintiff a letter via certified mail in which it notified its dealer of the winding down and termination of the Victory Motorcycle line and enumerated the reasons for such termination, such as the line's struggle "to develop the market share needed to succeed and be profitable." *See* ECF No. [20-3]. The letter thereafter provided notice that the Victory Motorcycle Dealer Agreement would not be renewed in July of 2018, thereby providing Plaintiff with notice 15 months prior to the non-renewal of the dealer agreement. *Id.* A copy of this letter was also sent to the DMV.[2] *See* ECF No. [30-1]. To support the creation of a duty, Plaintiff selectively relies on § 320.641 to require Defendant to disclose its intention not to renew the dealer agreement and ignores Defendant's compliance with the statute's 90-day disclosure requirement. By alleging that Defendant was required to disclose

---

[2] Plaintiff attached an incomplete version of Defendant's March 9, 2017 letter to the FAC. Defendant provided a complete copy of the letter in its Reply. *See* ECF No. [30-1]. At the hearing on the Motion to Dismiss, Plaintiff agreed that docket entry [30-1] is the complete copy of the letter Plaintiff received.

this information in December of 2016, Plaintiff seeks to stretch Defendant's statutory notice obligations far beyond what Florida law requires – by more than one year.  The Court finds that § 320.641 did not impose any legal duty on Defendant to disclose its non-renewal intentions in December of 2016 when it executed the 2016-2017 Dealer Agreement.

Finding no statutory duty to disclose, the Court next examines whether Plaintiff had a common law duty to disclose the information.  "[A] duty to disclose arises 'when one party has information that the other party has the right to know because of the fiduciary or other relationship of trust or confidence between them.'"  *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1429–30 (S.D. Fla. 1996) (citing *State v. Marks, P.A.,* 654 So. 2d 1184, 1189 (Fla. 4th DCA 1995), *reh. denied,* May 24, 1995). It is a well-settled principle that a franchisor is not in a fiduciary relationship with a franchisee.  *Id.* (collecting cases).  "[N]o other special or confidential relationship [exists] between franchisor and franchisee from which such a duty would arise."  *Id.* (citing *Burger King Corp. v. Austin,* 805 F. Supp. 1007 (S.D. Fla. 1992)). Franchisors and franchisees negotiate contracts at arms' length.  *Id.* (citing *Austin,* 805 F. Supp. at 1020).  In an arms'-length transaction, Florida law does not impose any duty on either party to act for the benefit of the party on the opposite side of the negotiating table.  *See also Burger King*, 932 F. Supp. at 1430 ("[N]o court in this Circuit or in Florida has extended the duty of disclosure to [a franchisor-franchisee] relationship. Rather, the courts have concluded that there is no duty of disclosure where the parties are negotiating at arms' length for a franchise."); *see also Lanz v. Resolution Tr. Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991) (citing *Metcalf v. Leedy, Wheeler & Co.,* 191 So. 690 (1939)) ("In an arms length transaction however, there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own due diligence have discovered.").   This Court finds

no reason to deviate from well-settled Florida law finding that parties negotiating an arms'-length transaction, such as one involving a potential franchise, do not form a special relationship that would impose a duty of disclosure. At the hearing, the Court asked Plaintiff whether it could direct the Court to any case law supporting the existence of an alleged special relationship between the parties and Plaintiff conceded that it could not. Given the nature of the transaction at issue, the Court concludes that no duty to disclose existed.

In sum, the Court finds that Plaintiff is unable to state a claim for fraudulent concealment as a matter of law. Failing to establish that Defendant owed Plaintiff a duty to disclose its intention to discontinue the Victory Motorcycle line prior to the entry of the 2016-2017 Dealer Agreement and failing to establish any detrimental reliance, Count 1 must be dismissed as a matter of law.

### b. Count 2 – Fraudulent Inducement

Plaintiff's fraudulent inducement claim also fails as a matter of law. "To state a cause of action for fraudulent inducement, a plaintiff must plead: '(1) the defendant made a false statement about a material fact; (2) the defendant knew the statement was false when he made it or was without knowledge of its truth o[r] falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment.'" *Persaud*, 2014 WL 4260853 at *12 (quoting *Barrett v. Scutieri*, 281 F. App'x 952, 953 (11th Cir. 2008)). Under Florida law, a plaintiff must plead an injury resulting from acting in justifiable reliance on the fraudulent representation. *Id.* (quoting *Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 F. App'x 890, 894 (11th Cir. 2013)). As with the claim for fraudulent concealment, Rule 9(b) also requires that the

circumstances constituting the fraudulent conduct be pled with particularity. *Persaud*, 2014 WL 4260853 at *12.

### i. False Statement

In this case, Defendant argues that there was no false statement made and, thus, there can be no claim for fraudulent inducement. In its Response and at the hearing, Plaintiff directed the Court to Defendant's written representation made one day after the 2016-2017 Dealer Agreement was executed in which Defendant stated: "We look forward to a long and profitable relationship." *See* ECF No. [20-2]; ECF No. [29] at 4. This is the sole misrepresentation alleged.[3] The same letter upon which Plaintiff relies for the purported misrepresentation also states that Plaintiff is a new Polaris dealer for six different vehicle lines consisting of: "ATV, SXS (Collectively ORV), Slingshot, Victory, Brutus & GEM." ECF No. [20-2]. The Victory Motorcycle line was one of six different Polaris product lines that Plaintiff was authorized to sell in the 2016-2017 Dealer Agreement. *See* ECF No. [20-1] at 30. Significantly, the March 9, 2017 letter only gave notice of the non-renewal of a singular product line, Victory Motorcycles. *See* ECF No. [20-3]. Following this letter, the parties entered into the 2017-2018 Dealer Agreement, which itemizes various Polaris product lines that Plaintiff is authorized to sell. *See* ECF No. [20-4] at 32. The documents attached to the FAC, which indicate that the relationship between the parties exists as to various product lines, contradict Plaintiff's allegation that Polaris made a false statement of material fact when it said it looked forward to a "long and profitable relationship." *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (internal citations omitted) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit

---

[3] Although the FAC vaguely references "verbal representations," at the hearing, Plaintiff's counsel indicated that the alleged misrepresentation consists of Defendant's letter expressing the desire for a "long and profitable relationship."

conflict with the contents of the exhibit itself, the exhibit controls. The classic example is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself."). The exhibits to the FAC are controlling and demonstrate that there was no false statement of fact made.

Defendant also argues that statements of future promises cannot form the basis of a claim for fraud. "As a general rule, fraud cannot be predicated upon a mere promise not performed." *Alexander/Davis Properties, Inc. v. Graham*, 397 So. 2d 699, 706 (Fla. 4th DCA 1981) (citing 14 Fla. Jur., Fraud & Deceit, Section 15). "However, under certain circumstances, a promise may be actionable as fraud where it can be shown that the promissor had a specific intent not to perform the promise at the time the promise was made, and the other elements of fraud are established." *Id.* (citing 14 Fla. Jur., Fraud & Deceit, Section 16). In order for Defendant's statement to constitute actionable fraud, Plaintiff must allege that, when Defendant made the statement, it had no intention of having a long and profitable relationship with Plaintiff. Significantly, the alleged misrepresentation does not identify a specific Polaris product line and the letter at issue refers to six different product lines. *See* ECF No. [20-2]. Polaris did not state it was looking forward to a long and profitable relationship *involving the Victory Motorcycle line* – the only product line that was not renewed. There are no allegations in the FAC that Polaris did not intend to maintain a long and profitable relationship as to all six product lines when it made the statement. Nor can there be such an allegation when the documents attached to the FAC indicate that the dealer relationship remains ongoing as to five other Polaris product lines. Such a statement of a future promise cannot be the basis for fraudulent inducement. For these reasons, the Court concludes that the statement within the December 9, 2016 letter does not constitute a false statement of material fact.

### ii. Detrimental Reliance

Even if the Court were to consider that the letter constitutes a false statement of material fact, the reliance element fails. Count 2 alleges that Plaintiff "relied to its detriment upon POLARIS' representations in deciding to enter into the 2016-2017 Dealer Agreement." *See* ECF No. [20] at ¶ 29. The only misrepresentation identified in the FAC, Plaintiff's response and at the hearing consists of the letter that states Defendant looks forward to a "long and profitable relationship" with Plaintiff. According to the FAC, Plaintiff and Defendant entered into the 2016-2017 Dealer Agreement on December 8, 2016. *See* ECF No. [20] at ¶ 10; ECF No. [20-1]. As of this date, no alleged misrepresentation had been made. Instead, the alleged misrepresentation regarding the "long and profitable relationship" occurred on December 9, 2016 - one day after the 2016-2017 Dealer Agreement was executed. *See* ECF No. [20] at ¶ 11; ECF No. [20-2]. Assuming the statement was indeed false, it would be impossible for Plaintiff to have relied upon this statement when entering into the 2016-2017 Dealer Agreement as the statement had not yet been spoken. It is axiomatic that, in a fraudulent inducement claim, one cannot be induced to act upon an allegedly false statement that has yet to be made at the time the action is taken. For this additional reason, Plaintiff's claim for fraudulent inducement cannot survive dismissal.

In Count 2, Plaintiff also alleges that it relied upon "the protection afforded to dealers by Florida Statute § 320.641." *See* ECF No. [20]. To state a claim for fraudulent misrepresentation, Plaintiff must have justifiably relied upon a false statement *made by Defendant*. While Plaintiff may have relied upon the protection of the statute, there are no allegations tying § 320.641 to any representation Defendant made to Plaintiff prior to the execution of the 2016-2017 Dealer Agreement. Plaintiff's mistaken belief that the dealer agreement would be continuous is based

on its misunderstanding of Florida law, not based on Defendant's representations. Without any causal link between a misrepresentation made by Defendant and reliance on that misrepresentation, Plaintiff cannot satisfy the element of justifiable reliance. This additional further supports the dismissal of Count 2 as a matter of law.

### c. Count 3 – Violation of FDUTPA

Finally, Count 3 asserts a claim for a violation of FDUTPA. Plaintiff invokes Florida Statute § 501.204, which makes it unlawful to engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. The purpose of FDUTPA, a consumer-protection statute, is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat § 501.202(2). Businesses and corporations that purchase goods or services are included in the definition of "consumers" under the statute. Fla. Stat. § 501.203(7). "To state a cause of action under FDUTPA, a consumer must allege sufficient facts to show he was actually aggrieved by an unfair or deceptive act committed by the seller in the course of trade or commerce." *Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, No. 04-60861-CIV-MARTINEZ, 2005 WL 975773, at *8 (S.D. Fla. Mar. 4, 2005) (citing *Tuckish v. Pompano Motor Co.,* 337 F. Supp. 2d 1313, 1320 (S.D. Fla. 2004) and *In re Crown Auto Dealerships, Inc.,* 187 B.R. 1009, 1018 (M.D. Fla. 1995)). Unfair practices are those that "offend[] established public policy and [] that [are] 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* (quoting *PNR, Inc. v. Beacon Prop. Mgmt. Inc.,* 842 So. 2d 773, 777 (Fla. 2003)). As to deceptive practices, these occur if there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in

the circumstances, to the consumer's detriment." *Id.* Thus, to state an unfair or deceptive practice under FDUTPA, the FAC must allege that Defendant's actions (1) offend an established public policy and are immoral, oppressive, unethical, or substantially injurious to a consumer or (2) involve a representation, omission, or practice likely to mislead the consumer who was acting reasonably in the circumstances to its detriment.

Count 3 alleges that, based on the continuing nature of franchise agreement under § 320.641, Defendant's "failure to disclose to BMS that it would not renew BMS' dealership rights to sell and service the Victory Motorcycles vehicle line-make past June 30, 2018 was a deceptive and unfair trade practice." *See* ECF No. [20] at ¶ 37. This claim mirrors the allegations in Count 1 for fraudulent concealment. As explained above, Plaintiff's reliance on § 320.641 for the contention that the franchise agreement would be continuing in nature is unreasonable when the same statute provides a non-renewal procedure – a procedure that was followed in this instance. Defendant's compliance with statutory requirements when opting to discontinue a product line does not offend an established public policy or involve any immoral, oppressive, unethical, or substantially injurious conduct. To the contrary, compliance with a statute would be consistent with the public policy underlying that statutory provision. Thus, Count 3 does not state a claim for an unfair trade practice.

The Court must, therefore, consider whether the concealment alleged in the FAC supports a claim for a deceptive trade practice under FDUTPA. Plaintiff argues "that the parties' Agreement had a continuous term pursuant to Fla. Stat. §320.641(2), [and] Defendant engaged in an unfair and deceptive trade practice by concealing from Plaintiff at the time it entered into the Agreement that it had decided not to renew the Agreement beyond July of 2018." ECF No. [29] at 9 (underline in original). The Response directs the Court to a single case for the proposition

that a failure to disclose in connection with the purchase and sale of goods is sufficient to state a claim under FDUTPA. *See Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602 (Fla. 2d DCA 1997). However, *Delgado* focused its analysis on the application of the economic loss rule to a consumer's contract-based claim under FDUTPA and summarily concluded in one sentence that the allegations stated a cause of action. *Id.* at 611. Given the lack of analysis, the Court does not find *Delgado* persuasive on the question of whether Count 3 states a claim for a deceptive trade practice under FDUTPA.

When analyzing whether an omission is deceptive, Florida's appellate courts consider whether the alleged omission "is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR*, 842 So. 2d at 777 (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)). Here, a consumer acting reasonably under the circumstances would not have been misled by the omission. This is because § 320.641 does not create a perpetual dealer agreement between a manufacturer, such as Defendant, and a dealer, such as Plaintiff. Rather, the statute provides a mechanism by which the licensee can exercise its right of non-renewal. Plaintiff's selective reliance on the first part of the statute while ignoring the modifying clause following the word "unless" is not reasonable. Despite Plaintiff's belief that Florida law requires a dealer agreement to be everlasting without exception, the Court concludes that a consumer acting reasonably under the circumstances would not interpret the statute in this way. Defendant's failure to disclose the non-renewal of the agreement eighteen months in advance when the statute only requires notice 90 days in advance would not mislead a reasonable consumer. Plaintiff's arbitrary interpretation of a Florida statute cannot form the basis of a deceptive practice under FDUTPA. It also bears noting, as explained in section

III(a)(i) *supra*, that the 2016-2017 Dealer Agreement disclosed that Defendant could discontinue a product line and choose not to renew the agreement, making Plaintiff's belief even more unreasonable. Finding that Plaintiff's claims do not allege either an unfair or a deceptive trade practice, the Court concludes that Count 3 fails to state a claim for relief.

## IV.     CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss First Amended Complaint, **ECF No. [22]**, is **GRANTED**. The First Amended Complaint is **DISMISSED WITH PREJUDICE**.

2. Pursuant to Federal Rule of Civil Procedure 58, Final Judgment in favor of Polaris Sales, Inc. will issue by separate order.

3. The Clerk shall mark this case **CLOSED**.

4. Any pending motions are **DENIED AS MOOT**, any scheduled hearings are **CANCELLED**, and all pending deadlines are **TERMINATED**.

**DONE AND ORDERED** in Miami, Florida, this 27th day of February, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record